IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ACTION MAILING CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 08-0671-CV-W-GAF |
| | ) |
| HEWLETT-PACKARD COMPANY, | ) |
| | ) |
| Defendant. | ) |

### ORDER

Presently before the Court is Defendant Hewlett-Packard Company's ("HP") Motion for Summary Judgment. (Doc. #36). HP asserts Plaintiff Action Mailing Corporation's ("Action") claims are barred by the applicable statute of limitations and/or otherwise inadequate to raise a material question of fact that would entitle Action to the relief requested. (Doc. ##36, 37). HP further request the Court grant Summary Judgment regarding its counterclaim for amounts due under the parties' agreement. (*Id.*). Action opposes. (Doc. #44). For the reasons set forth below, HP's Motion for Summary Judgment is **GRANTED**.

### DISCUSSION

**I. FACTS**

Action is a Missouri corporation, conducting business in Clay County, Missouri. (Petition ¶ 2). Action is in the business of providing direct mail marketing. (*Id*. at ¶ 6). HP is a Delaware corporation that designs and sells technological products, services, and solutions, including document automation software. (Answer ¶ 7). Exstream Software Inc. ("Exstream") was a Kentucky corporation engaged in the design and sale of document automation software. (Petition

¶¶ 3, 7). On April 1, 2008, Exstream merged with and into HP, and HP assumed Exstream's contractual rights and obligations. (Doc. #37-3).

Sometime around the spring of 2005, representatives from Action and Exstream began discussing the possibility of Action licensing Exstream's document automation software (the "Software"). (Petition ¶ 8). During the course of negotiations, Action claims two Exstream employees, Herman Faesi and Scott Pelletier, orally assured some of Action's employees that the Software would support dBASE III. (Deposition of Ryan Waggener, 96:3-97:2). On September 2, 2005, Action and Exstream formally entered into a Software License Schedule (the "License Agreement"). (Doc. #37-13). Paragraph 7 of the License Agreement, titled "Limited Warranty for Software," provides, in part:

> Exstream warrants for a period of one hundred and eighty (180) days from the Effective Date of the applicable License Schedule (the "**Warranty Period**") the Software licensed hereunder shall conform in all material respects to the then current corresponding User Documentation and shall operate on or with the hardware and operating environment identified in the User Documentation or applicable schedules, if any.

(Doc. #37-13). The License Agreement also contained a merger clause, which stated:

> This License Schedule is made pursuant to Exstream Software's Standard Master License Agreement governing the use of Software (viewable at www.exstream.com). which together constitutes the entire understanding between the parties, and no additional terms or modifications will be effective unless in a mutually signed writing.

(*Id.*).

To use the Software, Action was required to download the Software and User Documentation. (Doc. #37-14). To download the Software and User Documentation, Action had to accept the terms of the Master Agreement. (*Id.*). On September 21, 2005, Joel Reeder, an Action employee, accepted the terms of the Master Agreement and downloaded a portion of the Software.

2

(Aff't of Curt J. Clayton, ¶ 2). On September 22, 2005, Ryan Waggener accepted the Master Agreement and downloaded a different portion of the Software. (*Id.* at ¶ 3). Paragraph 4(a) of the Master Agreement, also entitled "Limited Warranty for Software," provides, in part, the following:

> Exstream warrants for a period of ninety (90) days from the Effective Date of the applicable License Schedule (the "**Warranty Period**"), the Software licensed hereunder shall conform in all material respects to the then current corresponding User Documentation . . . Exstream will have forty-five (45) days to cure any nonconformity.

(Doc. #37-16). Paragraph 9(b) of the Master Agreement, titled "License Schedules; Precedence," states the terms of the Licensing Agreement control when in conflict with the terms of the Master Agreement. (*Id.*) Thus, the Licensing Agreement's 180-day Warranty Period applies. Paragraph 4(a) of the Master Agreement states:

> **THE FOREGOING WARRANTIES ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, REGARDING THE PERFORMANCE, QUALITY, OR FUNCTIONALITY OF THE SOFTWARE OR ANY LATENT OR PATENT DEFECTS THAT MAY EXIST WITH RESPECT TO THE SOFTWARE, OR ANY PERFORMANCE OR MAINTENANCE BY EXSTREAM AS CONTEMPLATED HEREIN.**

(*Id.*) (emphasis in original). The Master Agreement also included the following "Limitation of Liability": "No action, regardless of the basis therefore, may be brought by Licensee more than one (1) year after the cause of action has accrued." (*Id.* at ¶ 5). Lastly, it provided a choice of law provision stating, in part, "this Agreement shall be governed by and interpreted in accordance with the laws of the Commonwealth of Kentucky." (*Id.* at ¶ 9(f)).

On March 29, 2006, Action, in an email, brought to Exstream's attention the fact it could not use dBASE III files in conjunction with the Software. (Doc. #37-20). Exstream replied that the Software does not support such files. (Doc. #37-21). In April 2006, Action also questioned

3

Exstream as to why it was unable to place images at the top of a print stream while using PCL Output. (Doc. #37-22). An Exstream employee responded that the Software does not permit a user to place images at the top of a print stream while using PCL Output. (*Id.*). On July 7, 2006, an attorney for Action sent Exstream a letter alleging the Software failed to conform to the agreement because it does not support dBASE III or allow a user to place an image at the top of a print stream when using PCL Output. (Doc. #37-23).

Efforts to resolve their differences failed, and on July 31, 2008, Action filed its Petition in the Circuit Court of Clay County, Missouri, suing Exstream and HP, who had assumed Exstream's rights and duties, for breach of express warranties Exstream's employees allegedly made prior to entering the agreement regarding the Software's compatibility with dBASE III and the ability to support certain PCL printing formats. (*See generally* Petition). Action also sought declaratory relief and recision of the parties' agreements. (*Id.*). HP answered Action's Petition and asserted a counterclaim for payments it claims Action owes. (Doc. # 37-2). On September 15, 2008, HP removed the action to this Court. (Doc. #1). HP now moves for summary judgment in its favor. (Doc. #36).

## II.     STANDARD

Fed. R. Civ. P. 56 addresses motions for summary judgment. Summary judgment should be granted if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. On summary judgment, a district court must view the facts "in the light most favorable to the nonmovant, giving it the benefit of all reasonable inferences to be draw from the facts." *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990).

4

## III. ANALYSIS

A federal court sitting in diversity must apply the statute of limitations rules of the state in which is sits. *Great Plains Tr. Co. v. Union Pacific R. Co.*, 492 F.3d 986, 992 (8th Cir. 2007). Thus, this Court applies Missouri's statute of limitations rules to this case. Under Missouri law, parties are generally free to choose the state whose law will govern the interpretation of their contracts, but such choice of law decisions apply only to substantive law. *Consol. Fin. Invs., Inc. v. Manion*, 948 S.W.2d 222, 224 (Mo. Ct. App. 1997). Missouri applies its own law to all procedural questions that are raised, and "considers statutes of limitations as procedural only and not as substantive law." *Id.* Thus, despite the parties' Kentucky choice of law provision, the Court applies Missouri law when deciding the present statute of limitations issue.

Under the Missouri Uniform Commercial Code ("MoUCC"), which the parties agree governs the subject matter of the present case, a party must generally bring a claim for breach of contract within four years of the breach. Mo. Rev. Stat. § 400.2-725 (2000). However, the MoUCC allows parties to agree to a shorter statute of limitations so long as the agreed upon time is not less than one year. *Id.* Here, the parties have agreed to a shorter statute of limitations, and the agreed upon length of time is not less than one year (i.e., it is one year exactly). Thus, the parties' one-year statute of limitations applies and is enforceable.

In *Owen v. General Motors Corp.*, 553 F.3d 913 (8th Cir. 2008) (applying Missouri law), the Eighth Circuit Court of Appeals decided an issue very similar to the one presented by the parties in this case. The case involved a buyer who bought a Chevrolet Tahoe on May 8, 1998. *Owen*, 553 F.3d at 916. The Tahoe was covered by a General Motors ("GM") express 3 year or 36,000 miles extended warranty. *Id.* Approximately 6 ½ years later, on October 9, 2004, the Tahoe's windshield

5

wipers failed. *Id.* GM refused to reimburse the out-of warranty cost. *Id.* Evidence was presented that indicated GM may have known that earlier models had similarly designed wiper motors that were prone to fail after the warranty had expired. *Id.* According to the buyer, GM should have disclosed this fact to them prior to purchase. *Id.* The buyer filed a class action suit against GM on April 3, 2006. *Id.* at 917.

GM moved to dismiss buyer's breach of warranty claim because it was barred by the four-year breach of warranty statute of limitations found in MoUCC. *Id.* at 918; *see also* Mo. Rev. Stat. § 400.2-725. MoUCC § 400.2-725(2) states a cause of action accrues and the applicable statute of limitation begins to run "when the breach occurs," and explains that a "breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." The buyer argued that the 3 year extended warranty was one for future performance and, thus, the statute of limitations did not begin to run on its claim until the date the defective wipers were discovered (i.e., October 2004). *Id.*

The Eighth Circuit rejected the buyer's argument. *Id.* The court reasoned, "The life of an express warranty cannot be extended beyond its terms by the discovery exception of the statute of limitations." *Owen*, 533 F.3d at 919. The court further held, "The cause of action for breach of an express warranty begins to accrue upon discovery only if the defect is, or should have been, discovered within the warranty period; at the latest, the cause of action begins to accrue on the date when the express warranty expires." *Id.*

6

In the present case, Action attempts to make a similar, yet less tenable, argument to the one the buyer made in *Owen*. Like the buyer in *Owen*, Action asserts that the 180-day warranty is a warranty for future performance. Unlike *Owen*, however, Action argues not that the applicable statute of limitations began to run at the time it knew or should have known of the alleged breach, but rather that the one-year statute of limitations agreed to by the parties did not begin to run until it "declare[d] the contract breached" on August 3, 2007, when "it told [HP] that they would not accept the proposed work-around because it would require them to revamp their entire computer system." (Doc. #44).

Action's argument fails for at least two reasons. First, setting aside the expiration of the 180-day warranty period and the *Owens* opinion, nothing in the language of the discovery exception suggests that a cause of action for breach of warranty should accrue on the date the non-breaching party rejects the breaching party's attempt to cure the breach rather than at the time the "breach is or should have been discovered." *See* Mo. Rev. Stat. § 400.2-725(2). Instead, it plainly says when there is a warranty for future performance the cause of action accrues when the breach "is or should have been discovered." *Id*.

One could argue various dates as the date when Action knew or should have known of the alleged breach. For instance, one could say Action should have known of the breach as soon as or shortly after it downloaded the Software and User Documentation in September 2005 because it then should have realized the Software was not compatible with its then-existing computer system. Another argument could be made that the limitations period began to run in March 2006 when Action informed Exstream it was unable to use the Software with its dBASE III files. Finally and at the very least, Action knew of the alleged breach on July 7, 2006, when its attorney sent Exstream

7

a letter alleging the Software failed to conform to the parties' agreement. According to the parties' one-year statute of limitations provision, Action had until September 2006, March 2006, or, at the latest, July 7, 2007, respectively, to file its present action. Instead, Action file on July 31, 2008, well beyond all of the aforementioned dates.

Second, neither party disputes that the 180-day warranty represents a warranty for future performance. *Owens* unambiguously holds that when a warranty for future performance applies, the last possible time when a plaintiff's cause of action may accrue on a breach of warranty claim is the date that warranty expires.[1] Action's 180-day warranty began on September 9, 2005, the day Exstream signed and accepted the Licensing Agreement. Thus, the warranty period ended on March 1, 2006, the latest date on which Action's cause of action could have arisen. Hence, applying the one-year limitation period to that date, Action had until March 1, 2007, at the latest, to file its present breach of warranty action. Action failed to file within that time.

Action failed to file within one year of either the time it knew or should have known of the alleged breach or the time preceding the expiration of the 180-day warranty. Therefore, Action's claim is time-barred by the parties' one-year statute of limitations, and HP is entitled to summary judgment regarding those claims. Further, because Action's claims are dismissed and it does not dispute that it has failed to pay monies otherwise due under the parties' agreement, HP is entitled to summary judgment on its counterclaim in the amount of $128,937.24, plus costs, expenses, and

---

[1] The *Owens* court did discuss the possibility that fraudulent concealment could toll the statute of limitations, but Action did not argue fraudulent concealment as a means to toll the one-year agreed upon statute of limitations. Regardless, such argument would likely fail because, as *Owen* notes, Missouri's general tolling statute, Mo. Rev. Stat. § 516.280 (2000), does not apply to a special statute of limitations, such as applies here. *Owens*, 533 F.3d at 920, n. 5; *see also Braun v. Petty*, 129 S.W.3d 449, 452 n. 3 (Mo. Ct. App. 2004).

8

prejudgment and postjudgment interest.[2]  Therefore, HP's Motion for Summary Judgment, in its entirety, is **GRANTED**.

## CONCLUSION

Action failed to file within one year of the time when the applicable statute of limitations began to run.  Thus, Action's claim is time-barred, and HP is entitled to summary judgment regarding all of Actions claims.  Further, because Action's claims are dismissed and it has failed to dispute it owes HP monies otherwise due under the parties' agreement, HP is entitled to summary judgment on its counterclaim.  For these reasons, and those set forth above, HP's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

s/ Gary A. Fenner
Gary A. Fenner, Judge
United States District Court

DATED:   October 26, 2009

---

[2] HP shall have up to and including sixty (60) days from the entry of this Order to submit Suggestions in Support of its claim for costs, expenses (including reasonable attorney fees), and interest.  Action shall have up to and including thirty (30) days from the entry of HP's said Suggestions to file it Suggestions in Opposition/Response.